1  VALKYRIE LAW GROUP, P.C.
2  HEATHER L. BLAISE, ESQ. (SBN 261619)
   1 N. State Street, Suite 1500
3  Chicago, IL 60602
   Telephone: 312-448-6602
4  Email: hblaise@valklaw.com
5
   Attorneys for Plaintiffs,
6  JOSEPH RAYHBUCK p/k/a FAT CODA STUDIOS,
   and WATCHDOG AI, INC.
7

8          **UNITED STATES DISTRICT COURT**
           **CENTRAL DISTRICT OF CALIFORNIA**
9

| | |
|---|---|
| 10  JOSEPH RAYHBUCK p/k/a FAT CODA STUDIOS, an individual, and<br>11  WATCHDOG AI, INC., a California<br>12  corporation, | CASE NO: _____<br><br>**COMPLAINT FOR COPYRIGHT INFRINGEMENT AND VIOLATIONS OF THE D.M.C.A.** |
| 13          Plaintiffs, | |
| 14      v. | |
| 15  ULTA BEAUTY, INC., a Delaware<br>16  corporation, | **DEMAND FOR JURY TRIAL** |
| 17          Defendant. | |
| 18 | |

19

20      Plaintiffs JOSEPH RAYHBUCK p/k/a FAT CODA STUDIOS and

21  WATCHDOG AI, INC., by and through their attorneys, Valkyrie Law Group, P.C., as

22  and for their Complaint for Copyright Infringement against Defendant ULTA

23  BEAUTY, INC., state as follows:

24              **NATURE OF THE ACTION**

25      1.    This is an action to stop Defendant's rampant infringement of Rayhbuck's

26  copyrighted work "Laterals" (hereinafter the "Work") for commercial gain on its social

27  media pages, and to recover damages for Defendant's willful conduct.

28  //

                        - 1 -

## JURISDICTION AND VENUE

2.     This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1338 (federal question).

3.     This Court has personal jurisdiction over Defendant in that, among other things, Defendant does business in this Judicial District, and Plaintiff does business and is suffering harm in this Judicial District.

4.     Venue is proper in this Judicial district pursuant to 28 U.S.C. §§ 1391(b)-(d) and 1400(a).

## THE PARTIES

5.     Plaintiff JOSEPH RAYHBUCK p/k/a FAT CODA STUDIOS ("Rayhbuck"), is an individual and citizen of California, domiciled in Castro Valley, California.

6.     Rayhbuck is an accompanist, performer, and producer specializing in drums and percussion for live and session work, dance class accompaniment, and composition.

7.     Plaintiff WATCHDOG AI, INC. ("Watchdog"), is California corporation with its principal place of business is located at 2261 Market Street, Suite 85449, San Francisco, California 94114.

8.     Watchdog is in the business of monitoring the web for unauthorized and unlicensed use of user's intellectual property on platforms such as TikTok, Instagram, and Youtube and granting licenses for such uses.

9.     Plaintiff Watchdog is Rayhbuck's exclusive agent with regard to enforcing Rayhbuck's rights as copyright holder, including copyright litigation, against unlicensed commercial usage of Rayhbuck's copyrighted works by third-party commercial businesses in order to promote, or otherwise in connection with, their brands or companies.

10.     Plaintiff Watchdog is Rayhbuck's exclusive agent in connection with granting master use and synchronization licenses for Rayhbuck's copyrighted works.

11.    Defendant ULTA BEAUTY, INC. ("Ulta," "Defendant") is a Delaware corporation with its headquarters located at 1000 Remington Blvd, #120, Bolingbrook, Illinois 60440.

12.    Defendant Ulta operates a nationwide chain of beauty stores offering cosmetics, skincare, fragrances, and salon services, including physical locations in this judicial district.

13.    Defendant also operates a social media empire, with millions of followers across multiple social media platforms and accounts, including follower consumers in this judicial district.

14.    Defendant is responsible for social media accounts associated with Defendant's owned properties and their subsidiaries (the "Social Media Pages").

## FACTS RELEVANT TO ALL COUNTS

### A. TikTok

15.    TikTok is a social media and entertainment platform that allows users to view, create, and share short videos.

16.    The TikTok App is one of the world's most popular social media platforms, with nearly 1.6 billion monthly active users across the globe.

17.    TikTok users can publish videos for others' viewing, including videos that they make themselves, and can apply filters and visual effects using the app's technology.

18.    TikTok also displays a curated feed of video content based on the users' viewing preferences, as well as advertisements.

19.    Users who create accounts are given personal profile pages that display their username and posted content.

20.    While TikTok's primary function involves video creation and viewing, it also contains a custom "in-app browser" that enables users to view external websites.

21.    TikTok directs users to these third-party websites in several different ways: 1) presents users with video ads in their feeds that include links to an advertised

product or service's website; and 2) users who have at least 1,000 followers can add links to external websites on their personal profiles, a feature that influencers, businesses, and organizations routinely use to direct viewers to their brands and products.

22.    When users tap on these ads or links while using the TikTok, the in-app browser opens these links internally within the TikTok App instead of transferring them to a separate web browser on the user's device such as Google Chrome or Safari.

23.    When users create videos on TikTok, they have the ability to add recommended music through the in-app music library, which includes trending audio clips.

24.    TikTok trends are viral phenomena that spread across the TikTok platform, driven by user participation in challenges, hashtags, dance routines, memes, or audio clips.

25.    These trends often begin with individual creators who upload content featuring a particular theme, concept, or challenge.

26.    As users discover these posts, they may replicate or remix the content, making it their own by adding personal twists.

27.    The spread of these trends is facilitated by TikTok's algorithm, which prioritizes content based on engagement metrics (e.g., likes, comments, shares, and watch time).

28.    The more engaging the content, the more likely it is to appear on a user's "For You" page, thus reaching a broader audience.

29.    This creates a snowball effect, where trends quickly gain momentum and visibility across the platform.

30.    Corporations, seeking to capitalize on the popularity of trends, may participate in these viral challenges or meme formats by incorporating third-party copyrighted works into their videos.

31.    TikTok trends frequently revolve around popular songs or audio clips,

1  which may be copyrighted.

2      32.   TikTok provides a commercial library for corporations to use without

3  obtaining additional licenses from rightsholders.

4      33.   The terms of TikTok's commercial library are as follows:

5  • These "Commercial Music Library Terms" (the "Terms") apply to the

6  use of sounds (music and non-music) selected from TikTok's

7  "Commercial Music Library" (the "CML"), whether via the TikTok

8  mobile app, web application or TikTok Creative Center website.

9  Sounds selected from the CML will be referred to in these Terms as

10  "Commercial Sounds".

11  • In addition to the CML being accessible by individual users, the CML

12  and Commercial Sounds are also made available to brands, businesses,

13  commercial entities and advertisers (collectively, "Business Users") for

14  inclusion in videos for posting on TikTok, which may include, but not

15  be limited to the following types of uses: • The association of a

16  Commercial Sound with a brand, logo or trademark or other brand

17  identifying characteristics. • Advertising, marketing, endorsing,

18  sponsoring or publicizing (including so-called paid "hashtag

19  challenges") a product and/or service on TikTok.

20  These types of uses will be referred to as "Commercial Uses".

21  If you engage in Commercial Uses, you acknowledge and agree to the

22  following terms:

23  • You may only post or share videos that include Commercial Sounds

24  within TikTok and by using the sharing features made available to

25  TikTok users. Commercial Uses outside of TikTok are not permitted

26  and no rights are granted by TikTok for such uses. Any uses outside of

27  TikTok are subject to you obtaining separate permission and licensing

28  the necessary rights directly from the Commercial Sound rights

holder(s). These types of outside uses include, but are not limited to, posting videos on third party digital platforms and inclusion of Commercial Sounds in audio or audiovisual content on television, radio and in theatrical media.

• You are not permitted to make available, distribute, or perform the Commercial Sounds separately from the videos into which you have incorporated the Commercial Sound.

• You are not permitted to use Commercial Sounds in an illegal manner or in any way that violates the rights of third parties, or in connection with any content that is illegal or otherwise violates TikTok's "Terms of Service" (including any associated "Community Guidelines"). In addition, some of the Commercial Sounds may be subject to additional requirements and/or restrictions, as further specified in the CML. You agree to comply with these additional requirements when you use Commercial Sounds.

• Commercial Sounds are the only sounds made available on TikTok for Commercial Uses. Otherwise, no rights are granted to make Commercial Uses of any other sounds (music and non-music) on or through TikTok.

• Commercial Sounds designated as "Premium" ("Premium Tracks") may be subject to an additional fee for their use. The exact amount may vary and the calculation of any associated fee for use of a Premium Track will be displayed at the time you purchase the applicable ad inventory. Except as described in this paragraph, all other terms and conditions applicable to Commercial Sounds also apply to Premium Tracks.

• With respect to Commercial Uses by Business Users, each such Business User hereby grants to TikTok and its affiliates the right to

provide data reporting to the rights holders of the Commercial Sounds used by the Business User in each instance. This data may include the number of views, creations, likes, followers, Business User platform account name, country of the Business User's home offices and industry in which the Business User operates, the campaign name(s) and Business User's targeted audience data, which may include, but may not be limited to, gender, personal interests and geo-location. Any data shared by TikTok pursuant to this paragraph will at all times be subject to all applicable privacy and data sharing laws and regulations.

• You (including Business Users) are responsible for any claims and disputes that arise from (i) your failure to adhere to and abide by these Terms, the "TikTok for Business Commercial Terms of Service" or TikTok's "Terms of Service"; (ii) your unauthorized use of Commercial Sounds (wherever or however accessed); and (iii) your unauthorized, unlicensed use of sounds contained in the non-commercial "General Music Library" made available to personal users of TikTok. In the event of any such claim, including any complaint, investigation, dispute, litigation or arbitration brought against TikTok and/or its affiliates, you shall indemnify and hold harmless TikTok and its affiliates from and against each such claim.

• If you access the CML or Commercial Sounds through the TikTok Creative Center web portal (and not via the TikTok mobile application), you must pay attention and adhere to the "Usable Placements" designation with respect to each Commercial Sound in order to select the appropriate Commercial Sound for your planned use. Commercial Sounds may only be used on designated platforms, which are listed in the "Usable Placements" section of the web portal version of the CML. To use Commercial Sounds in videos on media or platforms other than

the platforms listed under "Usable Placements", you must obtain separate permission from the rights holders, and you are responsible for such permissions and any associated license fees. Any platform not designated under the "Usable Placements" section should be considered not permitted for use of the Commercial Sound in question unless you first obtain the required consents and approvals from the applicable rights holder(s).

• If TikTok, at any time, loses the right, for any reason, to make available a particular sound that was previously available as a Commercial Sound in the CML, TikTok, in its sole discretion, may take down any videos (or any other associated audiovisual content) embodying the Commercial Sound in question or mute the audio so that the Commercial Sound is no longer audible when the video is played. TikTok has no liability to you or any third party with respect to the loss of rights associated with a particular Commercial Sound (and its removal from the CML), or the resulting take down or muting of videos embodying such Commercial Sound.

Commercial Music Library – User Terms, TikTok (2025), https://www.tiktok.com/legal/page/global/commercial-music-library-user-terms/en (last visited Sep. 24, 2025).

34. While TikTok provides its Commercial Music Library for users to select from, corporations often bypass proper licensing arrangements by using unlicensed copyrighted audio in their commercial videos.

35. In repurposing user-generated content and/or influencer videos that feature copyrighted works, corporations often exploit content without obtaining the necessary rights to use such content.

36. TikTok's Music Terms of Service provides in pertinent part:

TikTok offers its users a library of licensed music from which songs may be selected for inclusion in videos. If you include in your video a

- 8 -

song that was not chosen from the licensed library, then you confirm that you are the creator of that music and/or that you have all the rights and permissions needed to use that music in your video. Except as expressly set out in these Music Terms, you acknowledge that no rights in the music—either in the sound recordings or the underlying compositions embodied in them—are licensed to you under the TikTok Terms of Service or these Music Terms.

[…]

Below we describe some ways that you may choose to include music in your videos. In short, you should only include music in a video if you are sure that you have the rights or permissions to do so.

• Select audio from the general music library. When you upload your video content to TikTok, you can select music from a list of music recordings in our TikTok music library, which we call Sounds. Sounds are made available to individual users to include in their videos, so long as the videos are only for personal entertainment and non-commercial purposes. You shouldn't use a music recording from Sounds for any commercial purpose–including associating the music with, or promoting, a brand or business–unless you have obtained the necessary rights to use the music in that manner.

• Select audio from the commercial music library. You can also select music from the TikTok Commercial Music Library, which we call Commercial Sounds. Unlike Sounds, Commercial Sounds are made available to brands, businesses, commercial entities, advertisers or other Platform users (including individuals) that may be using the Platform for commercial purposes (collectively defined as a "Commercial User"). Music recordings selected from the Commercial Music Library can be used to promote a brand or for other commercial

purposes. Your use of the Commercial Sounds is governed by the Commercial Music Library Terms here.

• Upload your own music. Finally, you can also upload audio from your own personal device, such as audio that contains music we've licensed for use on the Platform or your own original work, by including such music directly in your TikTok video ("Original Sounds"). Your use of Original Sounds is governed by the TikTok Terms of Service. **If you're a Commercial User, you should not use an Original Sound uploaded by another user. If you're a Commercial User and you upload an Original Sound to your video, you confirm that (i) you own all the rights to the music included in the video; or (ii) the music is otherwise permitted by law; or (iii) you have permission from all necessary rights holders to use the Original Sound on the Platform.**

[…]

Music is part of the TikTok experience. But, to use music on our Platform, you must follow a few rules.

• Non-commercial uses. Unless you've selected a sound from our list of Commercial Sounds, music should only be used for personal, non-commercial purposes. Any other use of music to sponsor, promote, co-brand or advertise or in a way that creates an association between the music and a brand, product, good or service is prohibited unless you have obtained separate permissions and all necessary rights.

• Short-form uses. Our global music license agreements may require us to place limits on the duration of music that can be used in your video. While specific limitations vary, uses of music up to one minute in length are generally permitted.

• No alterations or modifications. You can not edit or alter the

1  fundamental character of any copyrighted music, unless you created the
2  underlying music or otherwise have the rights or permissions to do so.
3  • No stand-alone audio. You should not use music separately as stand-
4  alone audio without an accompanying video.
5  • No illegal uses. Don't use music in an illegal manner, in connection
6  with illegal content, or in violation of our Community Guidelines. In
7  addition, music shouldn't be used in a political context or for political
8  purposes unless you have separately obtained permission from all of
9  the rights holders to do so.
10  • Sharing videos on third-party platforms. In some cases, you may be
11  able to share TikTok videos to third-party platforms through our
12  service. If you do share your TikTok video to a third-party platform,
13  your TikTok video would be subject to the terms and conditions of that
14  third-party platform.

15  Music Terms of Service, TIKTOK (2025) https://www.tiktok.com/legal/page/
16  global/music-terms-eea/en (last visited Sept. 25, 2025) (emphasis added).

17      37.    Defendant is a Commercial User under the terms of the TikTok Music
18  Terms of Use and was on notice that it was not entitled to use any TikTok Original
19  Sound without first obtaining permission from all necessary rights holders.

20  **B. The Work**

21      38.    The Work entitled "Laterals" is a sound recording which embodies a
22  musical composition from Plaintiff Rayhbuck's album called "Drums for Modern
23  Dance Class (Horton Technique)."

24      39.    The Work was registered with the U.S. Copyright Office on October 28,
25  2024, Registration No. SR 1-016-157.

26      40.    The Work was used in a TikTok video posted by user @shelbysdanceact
27  on February 9, 2023 as a licensed use by that non-commercial user through TikTok's
28  Sounds, often referred to as the TikTok General Music Library

- 11 -

41.     The February 9, 2023 @shelbysdanceact video depicts the user in a dance studio performing contemporary dance while the Work plays in the background.

42.     The video became viral and its sound featuring the Work was recommended in TikTok's in-app music library as a trending audio clip.

43.     The original video has over 740,400 views, and the original sound was used in over 49,500 videos as part of the TikTok trend.

44.     However, the Work is not available for commercial use as it does not appear in TikTok's Commercial Music Library.

**C. Defendant's Infringing Videos**

45.     Defendant participated in the TikTok trend using the Work.

46.     On October 28, 2024, Defendant posted a TikTok video on its commercial TikTok page which included the Work using the @shelbysdanceact trending audio clip identified as a TikTok Original Sound, which garnered approximately 5,358 views (the "First Video") as of on or about July 21, 2025.

47.     On December 2, 2024, Defendant posted a second TikTok video on its commercial TikTok page which included the Work, which garnered approximately 4,272 views (the "Second Video") as of September 25, 2025.

48.     However, the Second Video does not use the trending original sound by @shelbysdanceact containing the Work as its audio and identified as that user's TikTok Original Sound.

49.     Instead, the audio for the Second Video was identified publicly by Defendant Ulta falsely as "original sound - Ulta Beauty" despite the fact that the sound is not Ulta's TikTok Original Sound and is instead Plaintiff's Work:



ultabeauty ✔
Ulta Beauty · 2024-12-2

**Follow**

We got the moves (and deals) for these online only Cyber Monday sale vibes 🕺 💅 #UltaBeauty #CyberMonday @paulreactss

♫ original sound - Ulta Beauty

CapCut · Editing made easy

1      50.     Defendant has over 1.5 Million TikTok followers.

51.     Defendant did not obtain any license or authority by Plaintiff Rayhbuck to use the Work in the videos posted on Defendant's commercial TikTok page described above (hereinafter the "Videos").

**D. Defendant's Intentional Infringement**

52.     As the owner of the Copyright rights under 17 U.S.C. §106, Plaintiff has the exclusive right to: Make Copies (17 U.S.C. §106 (1) to reproduce the copyrighted work in copies or phonorecords); Create Derivative Works (17 U.S.C. §106(2) to prepare derivative works based upon the copyrighted work;); Distribute (17 U.S.C. §106(3) to distribute copies or phonorecords of the copyrighted work to the public by sale or other transfer of ownership, or by rental, lease, or lending); Perform the Works Publicly (17 U.S.C. §106) (4) in the case of literary, musical, dramatic, and choreographic works, pantomimes, and motion pictures and other audiovisual works, to perform the copyrighted work publicly;); and Display the Works Publicly (17 U.S.C. §106(5)) in the case of literary, musical, dramatic, and choreographic works, pantomimes, and pictorial, graphic, or sculptural works, including the individual images of a motion picture or other audiovisual work, to display the copyrighted work publicly).

53.     Plaintiffs initially contacted Defendant Ulta on or about February 20, 2025 and February 26, 2025 regarding the infringing use of the Work, and Defendant Ulta failed to respond.

54.     On or about May 12, 2025, Plaintiffs again contacted Ulta regarding the infringement of the Work in the First Video, and demanded that Defendant Ulta cease and desist its unauthorized use of the Work, to provide any proof that the Work was properly licensed for use in the First Video, and for payment for Defendant's unauthorized use of the Work.

55.     Defendant continued to willfully and knowingly infringe the Work in the First Video until on or about July 21, 2025, when the First Video was removed from

- 13 -

1  the TikTok platform.

2          56.    Defendant continues to willfully and knowingly infringe the Work in the

3  Second Video as it remains on the TikTok platform and Defendant has included false

4  Copyright Management Information ("CMI") identifying the Work as an original work

5  of Defendant Ulta.

6                                          **COUNT I**

7          **DIRECT COPYRIGHT INFRINGEMENT AS TO THE FIRST VIDEO**

8          57.    Plaintiffs incorporate the preceding Paragraphs 1 through 56 of this

9  Complaint as if fully set forth herein.

10         58.    The Work is owned and/or controlled by Plaintiff Rayhbuck and is an

11  original, creative work and constitute copyrightable subject matter under the Copyright

12  Act.

13         59.    Rayhbuck owned and controlled the copyright to the Work during the

14  relevant times of Defendant's infringement.

15         60.    Defendant had access to but was not licensed by Plaintiff to use Plaintiff's

16  Copyrighted Works in the manner Defendant has used the Work.

17         61.    By its actions, Defendant's creation, posting, and distribution of the First

18  Video infringes Rayhbuck's copyright because Defendant: 1) reproduced the Work in

19  violation of 17 U.S.C. § 106 (1); 2)  prepared derivative works based upon the Work

20  in violation of 17 U.S.C. § 106(2); 3) distributed copies of the Work to the public by

21  sale or other transfer of ownership, or by rental, lease, or lending in violation of 17

22  U.S.C. § 106(3); 4) performed the Work publicly in violation of 17 U.S.C. § 106(4);

23  and/or 5) have displayed the Work publicly in violation of 17 U.S.C. § 106(5).

24         62.    Through these unauthorized uses, Defendant has unlawfully reproduced,

25  prepared a derivative work from and/or distributed the Work in violation of 17 U.S.C.

26  § 106 without any authorization, permission, license, or consent from Rayhbuck.

27         63.    Defendant's acts of infringement is knowing, deliberate, and in complete

28  disregard for Rayhbuck's rights.

64.    Defendant's conduct constitutes willful copyright infringement under 17 U.S.C. § 504(c)(2).

65.    As a direct and proximate result of Defendant's infringement of Rayhbuck's copyright and exclusive rights under copyright, Plaintiffs are entitled to their actual damages, including Defendant's profits directly and indirectly attributable to the infringement, in amounts to be proven at trial, pursuant to 17 U.S.C. § 504(b), or such other amounts as may be proper under 17 U.S.C. § 504(c).

66.    Plaintiff is irreparably harmed by the acts alleged herein and has no adequate remedy at law.

## **PRAYER FOR RELIEF AS TO COUNT I**

WHEREFORE, Plaintiffs pray for judgment from this Honorable Court in Plaintiffs' favor against Defendant:

a)  A declaration that Defendant has willfully infringed Plaintiff Rayhbuck's copyrighted Work in violation of the Copyright Act;

b)  A permanent injunction requiring Defendant and its agents, employees, officers, attorneys, successors, licensees, partners and assignees, and all persons acting in concert with any one of them, to cease directly and indirectly infringing, and causing, enabling, facilitating, encouraging, promoting, inducing, and/or participating in the infringement of any of Plaintiff's rights protected by the Copyright Act pursuant to 17 U.S.C. § 502;

c)  An order for impoundment of all copies made or used in violation of the exclusive rights of Plaintiff pursuant to 17 U.S.C. § 503;

d)  An order impounding records documenting the manufacture, sale, or receipt of things involved in the acts of infringement pursuant to 17 U.S.C. § 503;

e)  Plaintiffs' actual damages and Defendant's profits attributable to the infringement pursuant to 17 U.S.C. § 504(b), in an amount to be proven

at trial;

f) An order for an accounting and an award of Defendant's profits (including direct and indirect profits) pursuant to 17 U.S.C. § 504;

g) For pre-judgment and post-judgment interest at the applicable rate on any monetary award made part of the judgment against Defendant; and

h) Any and all relief deemed just and appropriate by the Court.

## COUNT II

**DIRECT COPYRIGHT INFRINGEMENT AS TO THE SECOND VIDEO**

67.    Plaintiffs incorporate the preceding Paragraphs 1 through 56 of this Complaint as if fully set forth herein.

68.    The Work is owned and/or controlled by Plaintiff Rayhbuck and is an original, creative work and constitute copyrightable subject matter under the Copyright Act.

69.    Rayhbuck owned and controlled the copyright to the Work during the relevant times of Defendant's infringement.

70.    Defendant had access to but was not licensed by Plaintiff to use Plaintiff's copyrighted works in the manner Defendant has used the Work.

71.    By its actions, Defendant's creation, posting, and distribution of the Second Video infringes Rayhbuck's copyright because Defendant: 1) reproduced the Work in violation of 17 U.S.C. § 106 (1); 2)  prepared derivative works based upon the Work in violation of 17 U.S.C. § 106(2); 3) distributed copies of the Work to the public by sale or other transfer of ownership, or by rental, lease, or lending in violation of 17 U.S.C. § 106(3); 4) performed the Work publicly in violation of 17 U.S.C. § 106(4); and/or 5) have displayed the Work publicly in violation of 17 U.S.C. § 106(5).

72.    Through these unauthorized uses, Defendant has unlawfully reproduced, prepared a derivative work from and/or distributed the Work in violation of 17 U.S.C. § 106 without any authorization, permission, license, or consent from Rayhbuck.

73.    Defendant's acts of infringement is knowing, deliberate, and in complete

- 16 -

1  disregard for Rayhbuck's rights.

2      74.    Defendant's conduct constitutes willful copyright infringement under 17

3  U.S.C. § 504(c)(2).

4      75.    As a direct and proximate result of Defendant's infringement of

5  Rayhbuck's copyright and exclusive rights under copyright, Plaintiffs are entitled to

6  their actual damages, including Defendant's profits directly and indirectly attributable

7  to the infringement, in amounts to be proven at trial, pursuant to 17 U.S.C. § 504(b),

8  or, *in the alternative*, at Plaintiffs' election pursuant to 17 U.S.C. § 504(c), to statutory

9  damages up to the amount of $150,000.00 per infringed work, or such other amounts

10 as may be proper under 17 U.S.C. § 504(c).

11     76.    Plaintiff is irreparably harmed by the acts alleged herein and has no

12 adequate remedy at law.

13               **PRAYER FOR RELIEF AS TO COUNT II**

14     WHEREFORE, Plaintiffs pray for judgment from this Honorable Court in

15 Plaintiffs' favor against Defendant:

16     a) A declaration that Defendant has willfully infringed Plaintiff Rayhbuck's

17        copyrighted Work in violation of the Copyright Act;

18     b) A permanent injunction requiring Defendant and its agents, employees,

19        officers, attorneys, successors, licensees, partners and assignees, and all

20        persons acting in concert with any one of them, to cease directly and

21        indirectly infringing, and causing, enabling, facilitating, encouraging,

22        promoting, inducing, and/or participating in the infringement of any of

23        Plaintiff's rights protected by the Copyright Act pursuant to 17 U.S.C.

24        § 502;

25     c) An order for impoundment of all copies made or used in violation of the

26        exclusive rights of Plaintiff pursuant to 17 U.S.C. § 503;

27     d) An order impounding records documenting the manufacture, sale, or

28        receipt of things involved in the acts of infringement pursuant to 17 U.S.C.

- 17 -

§ 503;

e)  For statutory damages pursuant to 17 U.S.C. § 504(c) for Defendant's willful infringement to the greatest extent provided by the Copyright Act, or, *in the alternative*, at Plaintiffs' election, Plaintiffs' actual damages and Defendant's profits attributable to the infringement pursuant to 17 U.S.C. § 504(b), in an amount to be proven at trial;

f)  An order for an accounting and an award of Defendant's profits (including direct and indirect profits) pursuant to 17 U.S.C. § 504;

g)  An order of costs and allowable attorney's fees pursuant to 17 U.S.C. § 505;

h)  For pre-judgment and post-judgment interest at the applicable rate on any monetary award made part of the judgment against Defendant; and

i)  Any and all relief deemed just and appropriate by the Court.

## <u>COUNT III</u>

## FALSE COPYRIGHT MANAGEMENT INFORMATION

## FOR SECOND VIDEO

77.  Plaintiffs incorporate the preceding Paragraphs 1 through 56 of this Complaint as if fully set forth herein.

78.  The Digital Millennium Copyright Act (DMCA) at 17 U.S.C. § 1202 prohibits the Defendant from knowingly, and with the intent to induce, enable, facilitate or conceal infringement, providing false copyright management information for the Work.

79.  The Digital Millennium Copyright Act (DMCA) at 17 U.S.C. § 1202 prohibits the Defendant from distributing or importing false copyright management information ("CMI") under 17 U.S.C. §§ 1202-1203.

80.  Under TikTok's Terms of Service, Defendant agreed not to use "any material which does or may infringe any copyright […] of any other person."  Terms of Service, TIKTOK (2023) https://www.tiktok.com/legal/page/us/terms-of-service/en

1 (last visited Sept. 25, 2025).

2      81.    Further, TikTok's Terms of Service incorporate TikTok's Intellectual

3 Property Policy, which provides in pertinent part:

4      Copyright is a legal right that protects original works of authorship

5      (e.g., music, videos, etc.). Generally, copyright protects an original

6      expression of an idea (e.g., the specific way a video or music is

7      expressed or created) but does not protect underlying ideas or facts.

8      Copyright Infringement

9      We do not allow any content that infringes copyright. The use of

10     copyrighted content of others without proper authorization or legally

11     valid reason may lead to a violation of TikTok's policies.

12 Intellectual Property Policy, TikTok (Mar. 27, 2025) https://www.tiktok.com/

13 legal/page/global/copyright-policy/en (last visited Sept. 25, 2025).

14     82.    Defendant is aware of its obligations under 17 U.S.C. § 1202 and its

15 agreement not to provide false copyright management information under the TikTok

16 Terms of Service.

17     83.    Defendant knows that it is a Commercial User under TikTok's Terms of

18 Service.

19     84.    Defendant knew that it did not have the right to use the TikTok Original

20 Sound posted by TikTok User @shelbysdanceact under the TikTok Terms of Service.

21     85.    Defendant knew that it did not have the right to change the title of the

22 @shelbysdanceact TikTok Original Sound to a TikTok Original Sound belonging to

23 Ulta.

24     86.    Defendant does not have ownership of the Work for any use.

25     87.    Defendant does not have a license to use the Work for any purpose.

26     88.    In order to gain entry to the online, social media marketplace, and to

27 induce, enable or facilitate use of content and/or distribute the content in the online,

28 social marketplace, Defendant used TikTok.

89.    TikTok has Terms of Service for its platform.

90.    Defendant was aware of the Terms of Service Agreements of the TikTok platform and had to agree to such Terms and Conditions before it could place and distribute its content onto the TikTok platform.

91.    TikTok's Terms of Service do not allow posting of unlicensed third party works.

92.    Defendant used the TikTok platform to distribute content, and to facilitate and enable use of the content for other users by falsely identifying the Work as a TikTok Original Sound by Ulta Beauty.

93.    The Work's true CMI does not appear in Defendant's Second Video; instead the Work is falsely identified as a TikTok Original Sound by Ulta Beauty as follows:



94.    Defendant's false identification of the Work as TikTok Original Sound by Ulta Beauty is false CMI placement on the content.

95.    Every instance that Defendant communicated false CMI is an act in violation of 17 U.S.C. §§ 1202-1203.

96.    Defendant Ulta communicated this false CMI at least 4,272 times as of the time of the filing of this Complaint.

97.    In order to conceal its infringement, Defendant falsely marked the work with Defendant Ulta CMI only.

98.    Defendant failed to provide truthful, complete and accurate CMI on the content.

99.    The acts set forth above in Paragraphs 77 to 98 show Defendant

- 20 -

knowingly, and with the intent to induce, enable, facilitate and/or conceal infringement, distributed CMI that is false.

100.    Defendant placed false CMI on the Works.

101.    Defendant's acts violate 17 U.S.C. §§ 1202-1203.

**A. Intent to Induce Infringement**

102.    The acts set forth above in Paragraphs 77 to 98 show that Defendant has an intent to induce infringement of the Works by providing False Copyright Management Information in one or more of the ways set forth in Paragraphs 77 to 98 above.

103.    Each of the acts set forth above in Paragraphs 77 to 98 show that Defendant has an intent to enable infringement of the Work by providing false CMI in the way set forth in Paragraphs 77 to 98 above.  The TikTok Terms of Service do not permit the uploading of unlicensed Works, and Defendant concealed CMI to enable Defendant to hide its inability to upload in compliance with the TikTok Terms of Service.

104.    Defendant's acts violate 17 U.S.C. § 1202-1203.

105.    Each of the acts set forth above in Paragraphs 77 to 98 show that Defendant has an intent to facilitate infringement of the Work by providing false CMI in one or more of the ways set forth in Paragraphs 77 to 98 above.

106.    Each of the acts set forth above in Paragraphs 77 to 98 show that Defendant has an intent to conceal infringement of the Work by providing false CMI in one or more of the ways set forth in Paragraphs 77 to 98 above.

107.    Defendant's continued intent to conceal infringement is further established by its refusal to remove the Second Video after being notified of the infringement of the Work while only removing the First Video wherein Defendant had not changed the CMI.

108.    Despite its knowledge that it did not have a right to use the Work, Defendant made no effort to remove the Second Video or to put correct CMI in the

- 21 -

1    Second Video.

2        109.    Instead, Defendant continued to provide and distribute CMI that is false.

3        110.    Defendant's failure to remove or correct the CMI on the Second Video

4    after being notified of the unlicensed placement, approximately seven (7) months ago,

5    and after removing the First Video evidences Defendant's intent to continue to enable,

6    facilitate and/or conceal infringement of the Work.

7        111.    One or more of Defendant's acts violates 17 U.S.C. §§ 1202-1203.

8        112.    Plaintiffs are irreparably harmed by the acts alleged herein and have no

9    adequate remedy at law. The public is harmed by the Defendant's presentation of the

10   false CMI on the Second Video, and there is no adequate remedy at law.

11       113.    Plaintiffs have been damaged, and Defendant has earned and unless

12   enjoined will continue to earn direct and indirect profits attributable to the

13   infringements alleged herein.

14       **PRAYER FOR RELIEF AS TO COUNT III**

15       WHEREFORE, Plaintiffs pray for judgment from this Honorable Court in

16   Plaintiffs' favor against Defendant and respectfully requests:

17       a)   A declaration that Defendant has violated 17 U.S.C. § 1203 and willfully

18           infringed Plaintiff Rayhbuck's copyrighted Work in violation of the

19           Copyright Act;

20       b)   Damages pursuant to 17 U.S.C. § 1203;

21       c)   Disgorgement of Profits pursuant to 17 U.S.C. § 1203;

22       d)   Statutory Damages pursuant to 17 U.S.C. § 1203 for each act in violation,

23           including the imposition of the false CMI information on the Second

24           Video and each communication by Defendant of false CMI to TikTok

25           users amounting to at least 4,272 false communications at the time of this

26           filing;

27       e)   Impoundment pursuant to 17 U.S.C. § 1203;

28       f)   Injunction pursuant to 17 U.S.C. § 1203;

COMPLAINT FOR COPYRIGHT INFRINGEMENT

g) Costs and reasonable attorneys' fees pursuant to 17 U.S.C. § 1203;

h) Remedial modification and/or destruction of the device or product involved; and

i) For such other and further relief as this Court deems appropriate.

## **JURY DEMAND**

Plaintiffs demand trial by jury on all issues so triable.

DATED: September 25, 2025          Respectfully submitted,

**JOSEPH RAYHBUCK p/k/a FAT CODA STUDIOS and WATCHDOG AI, INC.**

_/s/   Heather L. Blaise_

HEATHER L. BLAISE, ESQ. (SBN 261619)

*Attorney for Plaintiffs*

- 23 -